Christopher J. Reichman, SBN 250485
Justin Prato, SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>KUUBIX GLOBAL, LLC, SOLEGREEN USA, INC., and GENERATION CAPITAL MANAGEMENT, LLC,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Complaint

Plaintiff PAUL SAPAN ("Plaintiff" and/or "Plaintiffs"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant Kuubix Global, LLC, is, and at all times herein mentioned was, a Delaware Limited Liability Company, headquartered in the State of California, doing business in the County of Orange, State of California (hereinafter referred to as "Defendant" and/or "Kuubix Global").

3. Defendant Solegreen USA, Inc., is, and at all times herein mentioned was, a Delaware Corporation, headquartered in the State of California, doing business in the County of Orange, State of California (hereinafter referred to as "Solegreen").

4. Defendant Generation Capital Management, LLC, is, and at all times herein mentioned was, a New York Limited Liability Company, headquartered in the State of New York, doing business in the County of Orange, State of California (hereinafter referred to "Generation").

5. All Defendants collectively will be referred to as "Defendants".

6. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over

such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 387, 132 S.Ct. 740, 753 (2012).

7. At all times herein mentioned each Defendant was the parent or subsidiary of at least one of the other Defendants and was its agent and/or master.

8. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## **NATURE OF THE ACTION**

9. Plaintiffs bring this class action against Defendants for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from March 15, 2020, to the present, including up to and through trial.*

10. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

11. Defendants are engaged in a scheme to sell solar panels and installation via cold calls to residential phone numbers on the protected federal Do Not Call Registry without prior express written consent.

12. Thus, Defendants as engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

13. The modus operandi is the same for all the calls in this case, Defendants, either directly or through the use on an agent at the direction of Kuubix Global, Solegreen, or Generation, call various numbers in the United States to sell Defendants' services without regard to whether those numbers are on the Do Not Call Registry or not.

14. Defendants and/or their agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

15. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

16. Defendants have intentionally violated the TCPA in a so-far successful attempt to sell solar panels and installation for years.

## FACTUAL DETAILS RE NAMED PLAINTIFF

17. Defendants made seven (7) calls to PAUL SAPAN's home phone number (310-444-1999) trying to pitch their solar panels and installation services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):
- April 6, 2022, 9:38 am, CID 239-933-8794, CNAM [none].
- April 7, 2022, 10:18 am, CID 913-603-0824, CNAM [none].
- April 7, 2022, 2:03 pm, CID 984-223-2495, CNAM [none].
- April 12, 2022, 12:30 pm, CID 218-484-5248, CNAM [none].

- 4 -
Complaint

- April 12, 2022, 12:34 pm, CID 802-455-9291, CNAM [none].
- April 13, 2022, 10:10 am, CID 240-303-8957, CNAM [none].
- April 13, 2022, 10:22 am, CID 575-707-4426, CNAM [none].

18. Mr. Sapan made a log of all the calls he received from Defendants during or shortly after receiving the calls which includes the date and time of the call and the Caller ID information as well as brief notes about what happened during the calls which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

19. All of the calls illegally blocked transmitting Caller ID Name information. *See*, 47 U.S.C. § 227(e) (Truth in Caller ID Act of 2009).

20. All of the calls used wildly different caller ID numbers. All the area codes for the caller ID numbers are nation-wide, which is consistent with and illegal telemarketing practice of transmitting false caller ID numbers to inhibit the ability to determine the caller's identity from the CID alone.

21. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

22. Mr. Sapan never gave any Defendants or any other person, agent, employee or entity associated with Defendants express written permission to call him except for one single callback detailed below at the end of which permission was expressly revoked and which is not included in the violative calls above, nor does he have an established business relationship nor personal relationship with Defendants, or any other person, agent, employee or entity associated with the Defendants.

23. In just a short one-week time span from April 6, 2022 to April 13, 2022, Defendants transmitted seven (7) telemarketing calls to Mr. Sapan's residential phone (310-444-1999) to try to sell its services.

24. During the first call on April 6, 2022, at 9:38 am, using CID number 239-933-8794, an agent who said his name was "David" and claimed he was with "Solar Solutions" pitched solar panels and installation for Mr. Sapan's home.

25. Since Mr. Sapan knew that junk telemarketers constantly use vague and generic faked company names to introduce their pitches in order to evade detection and liability for illegal calling, Mr. Sapan decided to play along to determine who this really was.

26. "David" with "Solar Solutions" then asked if he had permission to contact Mr. Sapan even if he was on the Do Not Call Registry and, desiring to know who the caller really was working for and knowing that the Federal Communications Commission already decided consent cannot be developed during an illegal call because it must be 'prior express consent', Mr. Sapan said yes.

27. After obtain the ineffective consent, "David" brought someone on who said he was with "Solar Eligibility" and said he would make a phone appointment with a solar engineer for a presentation.

28. Since Mr. Sapan, again, knew that telemarketers constantly use vague and generic faked company names in order to evade detection and liability for illegal calling, Mr. Sapan decided to play along to determine who this really was and agreed to a single callback.

29. Later the same day at 11:03 am, using CID number 518-406-0791, an agent who said his name was "Justin" and claimed he was with "Sun Life Power" pitched solar panels and installation for Mr. Sapan's home and said they had a partnership with Kuubix Global.

30. Since Kuubix Global was a real company name and Mr. Sapan had now determined who was behind these calls, he revoked any permission by asking the caller to put him on the company's Do Not Call Registry and hung up.

31. Plaintiff does not contend this call is actionable under the TCPA since it was the agreed to single callback, but consent was revoked for any further calls.

32. Despite that, Defendants, through their agents, called again the next day, on April 7, 2022, at 10:18 am, using CID Number 913-603-0824, and, since he could not tell who was calling, Mr. Sapan answered the call.

33. The caller self-identified as being "David with Solar Solutions" and stated rather than asking for permission that he would call back in 20 minutes. Mr. Sapan never consented to this call or any further callback in 20 minutes or otherwise, having revoked any permission, and hung up.

34. Consent having been revoked, Mr. Sapan pleads that this and all later calls are actionable under the TCPA.

35. On the same day, at 2:03 pm, David called again asking Mr. Sapan if he would be interested in solar panels and installation. The call was dropped before Mr. Sapan could reinforce his desire for no further calls.

36. On April 12, 2022, at 12:30 pm, using a CID Number 218-484-5248, the caller self-identified as being "Mike with Solar Solutions", asking about Mr. Sapan's interest in solar panels and installation. Again, the called was dropped.

37. Four minutes later, at 12:34 pm, using a CID Number 802-455-9291, the caller self-identified as being "Jason" saying that he had just spoken to Mr. Sapan on the phone a few minutes before even though the prior caller had given his name as "Mike" whether it was the same person or not. He tried to transferred the call, but the call was dropped again.

38. On April 13, 2022, at 10:10 am, using CID Number 240-303-8957, the caller self-identified as being "Eric with Solar Solutions" asking about Mr. Sapan's interest in solar panels and installation. The caller tried to connect Mr. Sapan with an expert, but he was not able to. Therefore, the caller stated he would—but did not ask consent to—call Mr. Sapan again later, to which Mr. Sapan did not consent and hung up the phone.

39. On the same day, at 10:22 am, using a CID Number 575-707-4426 from New Mexico, the caller self-identified as being "Eric with Solar Solutions"

and connected Mr. Sapan to an unidentified woman. She briefly said that Mr. Sapan apparently already had solar panels and installation and hung up the phone.

40. As noted in Exhibit 1, Mr. Sapan answered all calls and each time he answered the caller self-identified as being with Solar Solutions, Solar Eligibility, or SunLife Power, who are Defendants agents through their own statements, and tried to sell solar panels and installation, and Mr. Sapna either hung up or Defendants' dropped the call presumably due to technical glitches.

41. Plaintiff alleges on information and belief that Defendants, through their agents, transmitted all calls to Mr. Sapan's residential line which was on the federal "Do Not Call" Registry to solicit the purchase of solar panels and installation, even though he expressly asked to not call again and to place his phone number in their DNC list.

42. Plaintiff pleads on information and belief that to the extent Defendants may have relied on any agent or other entity to make telemarketing calls on their behalf, and had direct knowledge that such calls are being made to residential numbers on the Do Not Call Registry.

43. Alternatively, Plaintiff pleads on information and belief that to the extent Defendants may have relied on any agent or other entity to make telemarketing calls on their behalf, Defendants hired those agents to interact with the public on their behalf and therefore gave implied authority to represent them.

44. Alternatively, Plaintiff pleads on information and belief that Defendants ratified the making telemarketing calls on their behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct.

45. Defendants may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## LIABILITY OF DEFENDANTS

46. As mentioned above, Defendants are the principal orchestrator of the illegal calls and boiler room telemarketing scheme.

47. In the second call received by Mr. Sapan on April 6, 2022 at 11:03 am the agent using a generic false name directly stated that they "have a partnership with Kuubix".

48. As detailed above and in Exhibit 1, while the initial callers identified themselves as being with "Solar Solutions", "Solar Eligibility", or "SunLife Power", each of them was calling in an attempt to transfer the call to the master in the master-agent which was Defendants or one of them, but in all those attempts a technical glitch cut off the call before it could be transferred to Defendants.

49. Plaintiff pleads on information and belief that the officers, managers and/or employees for Defendants knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made because the calling lasted for several months, always followed the same basic script.

## POSSIBLE AGENT LIABILITY ALLEGATIONS

50. Plaintiff pleads on information and belief that to the extent Defendants may have relied on any agent or other entity to make telemarketing calls on their behalf, and had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to use Defendants' names and giving them internal information regarding any prior contact the junk calling victim had had with Defendants even if over 10 years prior.

51. Alternatively, Plaintiff pleads on information and belief that to the extent Defendants may have relied on any agent or other entity to make

telemarketing calls on their behalf, and hired those agents to interact with the public on Defendants' behalf using their names and therefore gave implied authority to represent them.

52. Alternatively, Plaintiff pleads on information and belief that Defendants ratified the making telemarketing calls on their behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

53. Plaintiff pleads on information and belief that to the extent Defendants use any agents to make calls, and have ordered their agents to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

54. Plaintiff pleads on information and belief that to the extent Defendants use any agents to make calls, and knew or reasonably should have known (implied agency), that their agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

55. Plaintiff pleads on information and belief that to the extent Defendants use any agents to make calls, and explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for their benefit by condoning their actions afterwards.

56. Plaintiff pleads on information and belief that to the extent Defendants use any agents to make calls, and explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for their benefit.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

57. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call

any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

58. Defendants has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

59. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

60. Plaintiff has been harmed by the calls by the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

61. During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

62. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

63. Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

64. Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

# CLASS ACTION ALLEGATIONS

65. **Description of the Class**: Plaintiffs bring this class action against Defendants for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from March 15, 2020, to the present, including up to and through trial.*

66. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

67. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

68. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendants, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the

exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendants' call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

69. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a. Whether Defendants transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b. Whether Defendants transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c. Whether the transmission of these calls was done willfully or knowingly by Defendants.

d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendants and its agents.

70. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct since Defendants have repeatedly called the Class to sell their financial products.

71. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting

this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

72. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

73. Adjudication of individual class member's claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

/ / /

/ / /

/ / /

# CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

74. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

75. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

76. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

77. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

78. Defendants have called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendants have made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendants have express permission from Plaintiff to call, nor did Defendants have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

79. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

4. For attorney's fees pursuant to all applicable federal and state statutes;
5. For costs of suit herein incurred; and
6. For such further relief as the Court deems proper.

DATED: March 15, 2024                     **PRATO & REICHMAN, APC**

/s/ Christopher J. Reichman
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Paul Sapan

/s/ Justin Prato
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Paul Sapan